UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 25-409 (NEB)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

JONATHAN WEINHAGEN,
  a/k/a "James Sullivan,"

        Defendant.

**PLEA AGREEMENT AND SENTENCING STIPULATIONS**

The United States of America and the defendant, Jonathan Weinhagen, agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota (hereinafter "the United States" or "the Government"). This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1.   **Charges**. The defendant agrees to plead guilty to Count 3 of the Indictment, which charges the defendant with Mail Fraud, in violation of 18 U.S.C. § 1341. The defendant fully understands the nature and elements of the crime with which he has been charged.

Upon imposition of sentence, the government agrees to move to dismiss the remaining charges against the defendant contained in the Indictment.

2.   **Factual Basis**. The defendant is pleading guilty because he is in fact guilty of Count 3 of the Indictment. In pleading guilty, the defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

1

In May 2021, two minor children were killed, and a third child was injured, in a series of shootings in north Minneapolis. On May 21, 2021, the Chamber of Commerce contributed $30,000 to Crime Stoppers of Minnesota to fund three separate $10,000 rewards for information leading to the arrest and prosecution of the persons responsible for the shootings.

Approximately one year later, on May 23, 2022, the defendant emailed the president of Crime Stoppers of Minnesota to inquire about the status of the rewards. Upon learning that the rewards were unclaimed, the defendant requested that the $30,000 be returned to the Chamber of Commerce because it had "made a commitment to [its] investors to deploy the resources into the North Minneapolis Community." The defendant instructed Crime Stoppers of Minnesota to mail the refund check to his home address, which he falsely represented was the Chamber of Commerce's new address.

On June 6, 2022, Crime Stoppers of Minnesota sent a $30,000 check by the United States mail to the defendant's home address. Upon receiving the check, the defendant stole the money and used it to pay his personal expenses.

The defendant further admits the following facts and that those facts constitute relevant conduct pursuant to the United States Sentencing Guidelines:

Between December 2019, and April 2021, the defendant entered into three sham consulting agreements on behalf of the Chamber of Commerce with Synergy Partners, a fictional company the defendant invented for purposes of defrauding the Chamber of Commerce. The defendant signed the agreements on behalf of both the

Chamber of Commerce and Synergy Partners, using the alias "James Sullivan" when signing for Synergy Partners. The defendant caused the Chamber of Commerce to pay a total of $107,500 to Synergy Partners pursuant to the sham contracts. He deposited the proceeds from the sham contracts into a bank account he opened in Synergy Partner's name and used the money for personal expenses.

In November 2020, the defendant surreptitiously opened a $200,000 line of credit in the Chamber of Commerce's name at Northeast Bank. The line of credit was secured by a $250,000 certificate of deposit the Chamber of Commerce had at Northeast Bank. Over the course of the next year, the defendant drew a total of $125,000 from the line of credit, which he transferred to Synergy Partner's bank account and used for personal expenses. In October 2021, the defendant solicited contributions from two local businesses, totaling $60,000, to All of Mpls, an independent expenditures committee. He directed the businesses to wire the money to a Northeast Bank account he surreptitiously opened in the Chamber of Commerce's name and used the money to pay down the line of credit balance.

In January 2022, the defendant used the Chamber of Commerce's credit card to pay for a family vacation to Hawaii. In total, the defendant charged $15,701 onto the Chamber of Commerce's credit card for first-class airfare and a two-bedroom ocean-front room at the Hilton Hawaiian Village for him and his family. The defendant later created fake documents to make it appear that the charges were for legitimate Chamber of Commerce business.

In January 2025, the defendant applied for a $54,661 loan from SoFi Bank, a financial institution whose deposits are insured by the Federal Deposit Insurance Corporation. In the application, the defendant falsely stated that he earned an annual income of $425,000 from a Minnesota-based restaurant holding company. In support of his application, the defendant provided Sofi Bank a fraudulent paystub purportedly from the restaurant holding company showing an annualized gross income of $425,000. In reality, the defendant was not a salaried employee of, and did not earn $425,000 per year from, the restaurant holding company. The defendant knew that his employment status and income were material information to SoFi Bank.

3. **Waiver of Pretrial Motions**. The defendant understands and agrees that the defendant has certain rights to file pre-trial motions. As part of this plea agreement, and based upon the concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to have any pending motions resolved and to file any additional pre-trial motions in this case. The defendant agrees that, by pleading guilty, he is withdrawing any motions previously filed.

4. **Waiver of Constitutional Trial Rights.** The defendant understands that he has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to

testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent him. The defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

5. **Additional Consequences.** The defendant understands that as a result of this conviction, the defendant could experience additional collateral consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office. If the defendant is not a United States citizen, as a result of a plea of guilty, the defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future. The defendant has discussed with his attorney the punishments and consequences of pleading guilty, understands that not all of the consequences can be predicted or foreseen, and still wants to plead guilty in this case.

6. **Statutory Penalties.** The defendant understands that Count 3 of the Indictment, charging Mail Fraud in violation of 18 U.S.C. § 1341, is a felony offense that carries the following statutory penalties:

       a.       a maximum of 20 years in prison;

       b.       a maximum supervised release term of 3 years;

       c.       a maximum fine of $ 250,000, or twice the gross gain or loss caused by the offense, whichever is greatest;

       d.       restitution to victims as agreed to by the parties in this agreement and any mandatory restitution as provided for in this agreement; and

       e.       a mandatory special assessment of $100 under 18 U.S.C. § 3013(a)(2)(A).

7.    **Guidelines Calculations.** The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq*. Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence. The parties stipulate to the following guidelines calculations:

       a.       <u>Base Offense Level</u>. The parties agree that the base offense level is 7. U.S.S.G. § 2B1.1(a).

       b.       <u>Specific Offense Characteristics</u>. The parties agree that the offense level should be increased by 12 levels because the offense involved a total loss of more than $250,000 but less than $550,000. U.S.S.G. § 2B1.1(b)(1)(G). The parties further agree that the total offense level should be increased by 2 levels because the defendant misrepresented that he was acting on behalf of a charitable, educational, religious, or political organization. U.S.S.G. § 2B1.1(b)(9). The parties agree that no other specific offense characteristics apply.

       c.       <u>Chapter 3 Adjustments</u>. The parties agree that the offense level should be increased by 2 levels because the defendant abused a position of private trust to facilitate the commission and concealment of the offense. U.S.S.G. §

    3B1.3. The parties agree that, other than acceptance of responsibility, no other Chapter 3 adjustments apply.

d. *Acceptance of Responsibility*. The government agrees to recommend that the defendant receive a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the government of the defendant's intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional 1-level reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing.

    Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an adjustment for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility.

e. *Criminal History Category*. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category I. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on his true criminal history category, and he will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

f. *Zero-Point Offender Adjustment*. Because the defendant has zero criminal-history points and no disqualifying conduct, the parties

7

    agree the defendant qualifies for a 2-level adjustment under U.S.S.G. § 4C1.1.

  g. <u>Guidelines Range</u>. If the adjusted offense level is 18, and the criminal history category is I, the Sentencing Guidelines range is **27-33 months of imprisonment**.

  h. <u>Fine Range</u>. If the adjusted offense level is 18, the Sentencing Guidelines fine range is $10,000-$95,000. U.S.S.G. § 5E1.2(c).

  i. <u>Supervised Release</u>. The Sentencing Guidelines' term of supervised release is 1 to 3 years. U.S.S.G. § 5D1.2.

8. **Revocation of Supervised Release**. The defendant understands that if the defendant were to violate any supervised release condition while on supervised release, the Court could revoke the defendant's supervised release, and the defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. The defendant also understands that as part of any revocation, the Court may include a requirement that the defendant be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

9. **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and that their application is a matter that falls solely within the Court's discretion. The Court will make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also vary and/or depart from the applicable Guidelines range. If the Court determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the parties may not withdraw

from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

10. **Agreements as to Sentencing Recommendation.** The parties are free to recommend whatever sentence they deem appropriate. The parties reserve the right to make motions for departures under the Sentencing Guidelines or for variances pursuant to 18 U.S.C. § 3553(a) and to oppose any such motions made by the opposing party. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

11. **Special Assessments.** The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is convicted, pursuant to U.S.S.G. § 5E1.3. The defendant agrees to pay the special assessment.

12. **Restitution Agreement.** The defendant understands and agrees that the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A, applies and that the Court is required to order the defendant to make restitution to the victims of the defendant's crime(s). The defendant agrees that restitution is owed and agrees that the Court shall order the defendant to pay restitution in the amount of $153,201 to the Minneapolis Regional Chamber of Commerce. Additionally, the defendant agrees, pursuant to 18 U.S.C. § 3663A(a)(3), that the Court shall order him to pay restitution in the amount of $50,000 to Victim Company A; and $10,000 to Victim Company B.

The defendant understands that the Court may order additional restitution if additional victim losses are identified at the time of sentencing. The defendant agrees

that restitution shall be due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

13. **Disclosure of Assets.** The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution, fines, and forfeiture ordered by the Court. The defendant agrees to complete a financial statement within two weeks of the entry of his guilty plea. The defendant further agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets and expressly authorizes the United States to obtain a credit report on the defendant to evaluate the defendant's ability to satisfy financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

14. **Forfeiture.** The defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) in conjunction with 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the fraudulent scheme charged in Count 3 of the Indictment.

The defendant consents to entry of a money judgment forfeiture in the amount of $203,201 and agrees that the amount of proceeds the defendant obtained as a result of the fraudulent scheme charged in Count 3 of the Indictment equals or exceeds this amount. The United States reserves its right to seek a money judgment forfeiture, to forfeit substitute assets, and to forfeit additional directly forfeitable property.

The defendant waives all statutory and constitutional defenses to the forfeiture and waives any right to contest or challenge in any manner (including direct appeal, habeas corpus, or any other means) such forfeiture on any grounds. The defendant waives any right to seek remission or otherwise challenge the above-described forfeiture.

15. **Waivers of Appeal and Collateral Attack.** The defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes but is not limited to the defendant's waiver of the right to appeal guilt or innocence, any issues relating to the change-of-plea proceedings, the sentence imposed, the Guidelines calculations, any restitution obligations, and the constitutionality of the statutes to which the defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by defendant of the substantive reasonableness of a term of imprisonment above 33 months' imprisonment.

The defendant also waives the right to collaterally attack his conviction and sentence under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel. Further, this collateral-review waiver does not operate to waive a collateral challenge under 28 U.S.C. § 2255 based on new legal principles enunciated in Supreme Court case law decided after the date of this Plea Agreement that are both substantive and have retroactive effect. For purposes of this provision, legal principles that are substantive and retroactive are those that narrow the reach of the offense of conviction and render the defendant's conduct non-criminal or that render the sentence imposed illegal.

The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

The United States agrees to waive its right to appeal any sentence except the government may appeal the substantive reasonableness of a term of imprisonment below 27 months' imprisonment.

16. **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

17. **Complete Agreement.** This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant. By signing this plea agreement, the defendant

acknowledges: (a) that the defendant has read the entire agreement and has reviewed every part of it with the defendant's counsel; (b) that the defendant fully understands this plea agreement; (c) that no promises, agreements, understandings, or conditions have been made or entered into in connection with his decision to plead guilty, except those set forth in this plea agreement; (d) that the defendant is satisfied with the legal services and representation provided by defense counsel in connection with this plea agreement and matters related to it; (e) that the defendant has entered into this plea agreement freely, voluntarily, and knowingly; and (f) that the defendant's decision to plead guilty in accord with the terms and conditions of this plea agreement is made of the defendant's own free will.

DANIEL N. ROSEN
United States Attorney

Date: 12/1/2025

BY: Matthew C. Murphy
Assistant United States Attorney

Date: 12/01/2025

Jonathan Weinhagen
Defendant

Date: 12/1/25

Joseph T. Dixon III
Counsel for Defendant